## PRELIMINARY STATEMENT

Defendants J.P. Hogan Coring & Sawing, Corp. and John Hogan ("Defendants") submit this Memorandum of Law in support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).  It is undisputed that two of the four claims in the complaint seek redress for Defendants' alleged failure to compensate plaintiff Michael Gyecsek ("Plaintiff" or "Gyecsek") an appropriate overtime rate for hours that he allegedly worked over 40 per week. It is also undisputed that Gyecsek was a union member subject to a collective bargaining agreement.  In the operative collective bargaining agreements, there are provisions that define what kind of work is subject to the agreements and how much that work is to be compensated depending on whether it is in excess of eight hours per day.  At the center of this case is the question as to whether Defendants were required or merely agreed to pay Gyecsek for activities that he allegedly did coming and going from worksites, i.e., putting tools into the company truck at the beginning of the day and taking them off the truck at the end of the day and fueling the truck and other equipment.  If the Defendants merely agreed to pay him in an amount and rate that they could decide in their own discretion, which would be in alignment with amendments to the Portal-to-Portal Act, then the Court will have to decide to what rate the Defendants agreed to pay him.  If on the other hand the Defendants were required to pay him for these activities, then the Court will still have to decide what rate the Defendants were required to pay him.  Both inquiries will lead to the Court having to interpret the operative collective bargaining agreements' provisions regarding what kind of work falls within and/or outside of the agreements' jurisdiction.  Tellingly, in the complaint, Gyecsek himself does not allege what rate of pay he was paid for the activities at issue, thereby appearing to admit that he is unsure if those activities were or were not covered by the collective bargaining agreements.

Because the operative collective bargaining agreements are ambiguous as to whether they cover the activities for which Gyecsek seeks compensation the Court should refrain from offering its interpretation of this issue and allow the arbitration procedures contemplated by the collective bargaining agreements to play out and decide the question.  Since all of Plaintiff's claims but one lead back to this central question, the complaint should be dismissed in its entirety.  The retaliation claim, while clearly standing independent from the provisions of the collective bargaining agreement, is a New York State question over which there is little to compel this Court to exercise its supplemental jurisdiction since this litigation is in its infancy. Therefore, the retaliation claim should be dismissed as well.

## STATEMENT OF FACTS

According to the complaint, on a typical work day, Gyecsek would report to work at J.P. Hogan Coring & Sawing, Corp. at 5:30 a.m.[1]  See Complaint, ¶ 10.  He would load the company's truck with supplies and then head to a local gas station to fill the gas tank of the truck, the tanks of tools, and fill with water a 325-gallon tank.  See id., ¶¶, 10-11.  After completing these tasks, he would then drive to a work site where he would be required to be by 7 a.m.  According to the plaintiff's account, the pre-work-site activities took about 1.5 hours to perform.  See id., ¶ 13.

After working 8 hours at the work site, Gyecsek alleges that at about 3:30 p.m. he would drive the truck back to the company's lot where he would unload the truck and write up repair tickets, "as needed," before departing home at approximately 4:30 p.m. or 5 p.m.  See id., ¶ 15. According to Gyecsek, post-work-site activities took an additional 1 or 1.5 hours.  See id., ¶ 16.

In all, Gyecsek alleges that he worked on average 15 hours of overtime per week.

---

[1] In accordance with standard practice on motions to dismiss, in the Statement of Facts, we assume the allegations in the complaint to be true while reserving the right to contest the verity of each and every allegation therein should there be subsequent litigation in this case.

As for whether he was compensated for these pre- and post-work-site activities, Gyecsek alleges that initially the Company paid him "the full overtime rate." See id., ¶ 18. As mentioned above, Gyecsek does not state what that "full overtime rate" was in terms of dollars and cents. In December 2013, the Company started paying Gyecsek only two additional hours of pay per day and at his regular rate of pay, according to the complaint. See id., ¶ 19. Again, the complaint is silent as to what his "regular rate of pay" was in terms of dollars and cents. In May 2016, the Company ceased paying Gyecsek for any of the pre-and post-work-site activities, according to the complaint. See id., ¶ 16.

At all relevant times, according to the complaint, Gyecsek was a member of Building, Concrete, Excavating and Common Laborers Union Local 731. See id., ¶ 8. As a member of that union, Gyecsek would have been subject to a collective bargaining agreement during the entire relevant period. See Declaration of Chad L. Edgar dated July 20, 2018, Ex. A & B. One of the key provisions of these collective bargaining agreements is the section entitled "Work Jurisdiction," Article VI, which defines which work activities of the union members are viewed as within the scope of the agreements. Article VI, in turn, enumerates all of the activities covered by the agreement, which includes in two different subsections provisions potentially applicable to Gyecsek's pre- and post-work-site activities: "The use of pickup trucks for moving men to and from various job sites, for moving out tools, for picking up water and other pickup uses" (Art. VI., Section A, ¶ 53)[2]; "The use of pick-up trucks and/or vans for moving men to and from various job sites, for moving out tools, for picking up water and other pick-up uses" (Art VI., Section C, ¶ 75)[3]; and "Distribution of tools from warehouse, toolhouse, storeroom or shanty, as customarily done; and in connection with the loading and hauling of laborers' tools

---

[2]The parallel provision in the later agreement is found in Article VI, Section A, ¶ 54.
[3]The parallel provision in the later agreement is found in Article VI, Section C, ¶ 75.

and materials to and from jobs where laborers represented by Local 731 are engaged in heavy construction or engineering work as well as other laborers' work" (Art. VI., Section C, ¶ 90)[4].

There are two other articles of the agreement that are relevant to this motion.  First, there is Article VII entitled "Wages and Conditions," which defines overtime, the rate to be paid for it and the regular rate.  Second, there is Article IV entitled "Disputes" which contemplates the mandatory arbitration of any claims "of violation of this Agreement or of any dispute that may arise in connection therewith or for construing the terms and provisions thereof.... **shall** be submitted to arbitration before a single arbitrator." (Article IV, Section 2) (emphasis added).[5]

## ARGUMENT

### I.    The Standard For A Motion To Dismiss

Only complaints that state plausible claims survive a motion to dismiss.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  In order to survive a motion to dismiss, a plaintiff must provide the grounds for entitlement to relief, which requires more than "a formulaic recitation of elements of a cause of action."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  <u>Id.</u>

On a motion to dismiss, it is well settled that all facts and allegations in the complaint must be taken as true and viewed in a light most favorable to the plaintiff.  <u>See</u> <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 188 (2d Cir. 2008).  A federal district court should nonetheless grant a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the

---

[4] The parallel provision in the later agreement is found in Article VI, Section C, ¶ 90.
[5] Articles IV and VII are the same in both agreements.

allegations.'" H.J. Inc. v. Northwestern Bell Tel., Co., 492 U.S. 229, 249-50 (1989) (quoting

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

## II.     The Standard For Finding Claims Preempted
By The Labor Management Relations Act

Section 301 of the Labor Management Relations Act ("LMRA") provides in relevant part

as follows: "[s]uits for violation of contracts between an employer and a labor organization

representing employees in an industry affecting commerce ... may be brought in any district

court in the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).  It is well

established that claims, whether federal or state, may be preempted by § 301 and therefore

subject to dismissal where they are "substantially dependent upon analysis of the terms of an

agreement made between parties in a labor contract."  Vera v. Saks & Co., 335 F.3d 109, 114 (2d

Cir. 2007) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211, 220 (1985); Ramirez v.

Riverbay Corp., 35 F. Supp. 3d 513, 522 (S.D.N.Y. 2014) ("Similarly, § 301 precludes claims

under the FLSA that involve interpretation of a CBA").

Numerous district courts have observed that discerning whether a claim "substantially

depends upon analysis of the terms of an agreement made between parties in a labor contract" is

an inexact science.  See Kaye v. Orange Regional Medical Center, 975 F. Supp. 2d 412, 421

(S.D.N.Y. 2013) ("'The Second Circuit has cautioned that '[t]he boundary between claims

requiring interpretation of a CBA and ones that merely require such an agreement to be

consulted is elusive'").  In Kaye, the Court provides the most thoroughly articulated test for

assessing whether claims brought in a lawsuit are preempted by the LMRA.  There, the Court

cites three instances where preemption occurs: (1) where the plaintiff alleges that the defendant

violated a governing collective bargaining agreement; (2) where the plaintiff alleges that a

provision of a governing collective bargaining agreement violates relevant law; and (3) where a

provision in a collective bargaining agreement relevant to plaintiff's claim is ambiguous.  Id. at

423.  For the purposes of this motion to dismiss, the third instance is alone relevant.

**III.    The Court Must Interpret An Ambiguous Provision
Of A Governing Collective Bargaining Agreement
<u>In Order To Resolve All But One Of The Claims Of The Complaint</u>**

In this case there is a question that will inevitably involve the Court in having to interpret

ambiguous provisions of the governing collective bargaining agreements in order to answer it.

Before we get to that question, however, we note that the Court must first address whether the

pre- and post-work-site activities that Gyecsek alleges that he performed are compensable under

federal and New York State labor laws.  Defendants intend to argue that the pre-and post-work-

site activities cited by Gyecsek fall within the ambit of the Employer Commuter Flexibility Act

of 1996 ("ECFA") and therefore are not compensable.  See Colella v. City of New York, 986 F.

Supp. 2d 320, 337-38 (S.D.N.Y. 2013).  Even if such activities are not compensable under the

ECFA, an employer may still be liable for an employee's activities associated with the use of a

company truck if they agree to do so by agreement or custom or practice.  See id. at 342.  In

deciding the question as to whether the Defendants are liable by agreement, custom or practice

and the related question as to whether they breached same, this Court will have to decide

whether the pre- and post-work-site activities fall within the jurisdiction of the relevant collective

bargaining agreements.  In other words, it could be that the collective bargaining agreements

represent the Defendants' "agreement" to pay Gyecsek for his otherwise non-compensable time.

In deciding the question as to whether Gyecsek's pre- and post-work-site activities are

within the contemplation of the collective bargaining agreements, the Court will have to interpret

the three provisions referenced in the Statement of Facts.  Each provision is susceptible to

opposing interpretations.  On the one hand, the provisions appear to support the contention that

the use of trucks to move workers and tools to and from work sites is covered by the collective bargaining agreement.  On the other hand, the provisions appear to support the contention that they are applicable only to those drivers whose activities are dedicated solely to transporting workers and tools.  In other words, a reasonable interpretation of the provisions is that they contemplate a union worker whose job it is to transport men and tools from worksite to worksite.  Clearly, Gyecsek was not such a union worker, according to the description of his duties in the complaint.  In addition, the provision that reads, "Distribution of tools from warehouse, toolhouse, storeroom or shanty, as customarily done; and in connection with the loading and hauling of laborers' tools and materials to and from jobs where laborers represented by Local 731 are engaged in heavy construction or engineering work as well as other laborers' work," appears to make a conscious distinction between two job functions - "loading and hauling of ... tools and materials" and the actual work of construction or engineering done by the typical union worker.  This provision appears not to contemplate a worker who engages in these two different job functions; nor does it or the other provisions contemplate the transportation of only oneself as opposed to the transportation of other union workers as labor within the jurisdiction of the collective bargaining agreements.  A fair assessment of all of these provisions is that they do not clearly and unmistakably answer the question as to whether the kind of activities at issue in this case are within the jurisdiction of the collective bargaining agreements.

Should the question about the threshold question as to the compensability of Gyecsek's pre- and post-work-site activities be decided in favor of the plaintiff, i.e., that he was owed compensation for these activities, the Court will nonetheless have to interpret the same provisions in order to calculate what, if any, overtime compensation he is owed.  In order to calculate Defendants' liability for overtime compensation, if there is any (and of course we do

not concede there is), the Court will have to decide first what Gyecsek's regular rate is for those activities, which, in turn, will require the Court to return to the question as to whether the activities at issue are covered by the collective bargaining agreements and therefore subject to the compensation rates therein.  In other words, all paths in this case lead back to the question as to whether Gyecsek's pre- and post-work-site activities fall within the jurisdiction of the governing collective bargaining agreements.[6]   That being said, <u>Kaye</u> instructs this Court that Gyecsek's claims are preempted by the LMRA, except perhaps the retaliation claim, and therefore they should be dismissed.

## III.    The Court Should Not Exercise Supplemental Jurisdiction <u>Over The Remaining NYLL Retaliation Claim</u>

Plaintiff's claim for retaliation in violation of NYLL § 215 is not as obviously preempted by the LMRA, except in the calculation of damages should Defendants be found liable (and obviously Defendants deny the allegations supporting this cause of action).  To the extent that it is not preempted, the retaliation claim should nonetheless be dismissed in light of the fact that Gyecsek's sole federal claim must be dismissed.

According to the Supreme Court, when federal claims have dropped out of a case in federal court in its early stages and only state claims remain, the district court should decline to exercise jurisdiction over the state claims and dismiss them without prejudice.  <u>See</u> <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343 (1988).  While <u>Cohill</u> does not set a hard-and-fast

---

[6]Notably, the question as to Gyecsek's regular rate is also a threshold question as to his "spread-of-hours" claim. According to the majority view, a spread-of-hours claim is only applicable to those plaintiffs who make minimum wage and work shifts that last longer than ten hours.  <u>See</u> <u>Li Ping Fu v. Pop Art Int'l Inc.</u>, 10 Civ. 8562, 2011 WL 4552436 at *6 (S.D.N.Y. Sept. 19, 2011).  Here, in order to discern whether Gyecsek is owed a premium payment for a longer than ten-hour shift the Court must decide whether his regular rate was equal or more than the then current minimum wage.  Should the Court decide that the pre- and post-work-site activities are not compensable, then the shift that Gyecsek worked would obviously not be longer than ten hours.  <u>See</u> <u>Pietrzycki v. Heights Tower Service, Inc.</u>, 14 Civ. 6546, 2017 WL 5891200, at *9 (N.D. Ill. November 29, 2017) (holding that a custom or practice of paying employees for non-compensable travel time does not make those hours "worktime").  Even if Gyecsek's "spread-of-hours" claim is not preempted, it should be dismissed without prejudice nonetheless for the reasons stated in Section III.

rule, most courts understand that in most instances where only state claims remain in a case in federal court before trial, those claims should be dismissed without prejudice.  <u>See</u>, <u>e.g.</u>, <u>Wright v. New York City</u>, 02 Civ. 4251, 2006 WL 1212155, at *14 (E.D.N.Y. May 3, 2006); <u>Chang v. City of New York Dept. for the Aging</u>, 11 Civ. 7062, 2012 WL 1188427, at *7 n.8 (S.D.N.Y. April 10, 2012) ("Given the early state of the litigation, the Court should alternatively decline to exercise jurisdiction over these claims and dismiss them without prejudice").

Here, where the one federal claim in a federal lawsuit is dismissed and only a state claim or claims remain, the Court properly exercises its discretion by dismissing the case in its entirety.

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that this Court grant its motion to dismiss the Complaint and award Defendants such other and further relief as this Court deems just and proper.

Dated: New York, New York
 July 20, 2018

CARDI & EDGAR LLP

/s/
BY: _____
      Chad L. Edgar

99 Madison Avenue, 8th Floor
New York, NY 10016
212.481.7770 (tel.)
212.271.0665 (fax)
cedgar@cardiedgarlaw.com
*Attorneys for defendants J.P. Hogan Coring*
 *& Sawing, Corp. and John Hogan*