UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MICHAEL GYECSEK,

    *Plaintiff,*

 -against-

J.P. HOGAN CORING & SAWING, CORP.
and JOHN HOGAN, individually,

    *Defendants.*

-----------------------------------------------------------X

18 Civ. 1023 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

 Defendants move to dismiss Plaintiff's action for unpaid overtime wages under the Fair Labor Standards Act and New York state law for his time loading, unloading, and driving a company truck to and from a construction site. He also alleges that he was unlawfully fired in retaliation for complaining about unpaid overtime to the New York State Department of Labor.

 Plaintiff was a member of a union, but does not rely on or refer to the union's collective bargaining agreement ("CBA") in his Complaint. Defendants urge that Plaintiff's overtime claims are preempted by the Labor Management Relations Act ("LMRA"), because they require the Court to interpret ambiguous provisions of the CBA. Accordingly, Defendants move to dismiss the overtime claims and to decline to exercise supplemental jurisdiction over the remaining state law retaliation claim. Defendants also assert that their motion to dismiss could be converted to a motion for summary judgment so the Court can reference the CBA.

 For the following reasons, the Court DENIES Defendants' motion to dismiss. It would be premature to rule on a motion for summary judgment, and the Court declines to do so.

## BACKGROUND

As alleged in the Complaint, Plaintiff Michael Gyecsek began working for J.P. Hogan Coring & Sawing, Corp. ("J.P. Hogan") in or about 2011 as a laborer, concrete cutter, and truck driver. (Dkt. 7 ("Compl.") ¶ 6.) During his employment at J.P. Hogan, Plaintiff was a member of Building, Concrete, Excavating and Common Laborers Union Local No. 731. (*Id.* ¶ 8.)

On a typical morning, Plaintiff arrived at J.P. Hogan at 5:30 a.m. (*Id.* ¶ 10.) Once he arrived, Plaintiff loaded a company truck with supplies, drove the truck to a gas station, where he fueled the truck and filled a 325 gallon water tank for use at the job site, and drove to the assigned job site. (*Id.* ¶¶ 10-12.) These morning duties took approximately 1.5 hours. (*Id.* ¶ 13.) Once Plaintiff arrived at the job site, he would work 8 hours cutting concrete and/or performing other assigned tasks. (*Id.* ¶ 14.) At the end of the day, Plaintiff drove the truck back to J.P. Hogan, where he often unloaded the truck and wrote up repair tickets before departing for home in his personal vehicle. (*Id.* ¶¶ 15-16.) These afternoon duties took approximately 1.5 hours. (*Id.* ¶ 16.) Plaintiff thus worked a total of 3 additional hours on top of the hours he clocked at the actual job site each day. (*Id.* ¶ 17) Plaintiff's total work hours always exceeded 40 hours per week, and regularly totaled at least 55 hours per week. (*Id.* ¶ 17.)

J.P. Hogan initially paid Plaintiff an overtime rate for the 3 daily hours he worked away from the job site. (*Id.* ¶ 18.) In December 2013, however, J.P. Hogan stopped paying Plaintiff the full overtime rate of pay for 3 additional hours, and started paying him only for 2 additional hours per day, at Plaintiff's regular rate of pay as opposed to an overtime rate. (*Id.* ¶ 19.) From May 2016 through the date of his termination on July 21, 2017, J.P. Hogan paid Plaintiff only for the 40 hours he worked at the job site, and did not pay him for any overtime hours worked. (*Id.* ¶¶ 20-22.)

In early 2017, Plaintiff reported J.P. Hogan's failure to pay overtime to the New York State Department of Labor. (*Id.* ¶ 23.) He attempted to recruit other J.P. Hogan laborers to file an anonymous complaint, which he drafted and a copy of which he accidentally left in a photocopier at J.P. Hogan's office. (*Id.* ¶¶ 25-28.)

On July 20, 2017, the day after he left a copy of the anonymous complaint in the photocopier, Plaintiff was terminated at the end of his shift. (*Id.* ¶ 29.) At a meeting to discuss Plaintiff's termination, Defendant John Hogan stated, "I don't have to tell you why I am firing you." (*Id.* ¶ 31.) John Hogan's son, Jack Hogan, a member of J.P. Hogan senior management, added that he "tried to take care of you guys . . . you know, the drive time," to which Plaintiff pointed out that John Hogan was firing him because he complained to the Department of Labor about unpaid overtime. (*Id.*) John Hogan replied to Plaintiff, "You did this to yourself, you had [a] good thing and you messed this up." (*Id.* ¶ 32.)

## DISCUSSION

### I. Proper Standard

To defeat a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At the motion to dismiss stage, the court "assess[es] the legal feasibility of the complaint," but does not "assay the weight of the evidence which might be offered in support thereof." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir.

3

2011). The court must construe the factual allegations contained in the complaint as true and view the complaint in the light most favorable to plaintiffs. *Twombly*, 550 U.S. at 572.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In considering a 12(b)(6) motion to dismiss, the Court is bound by the complaint and documents attached or incorporated in it by reference. *See Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Plaintiff, as master of his Complaint, did not refer to or attach the CBA, and it is inappropriate for the Court to consider it here. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 203 (2d Cir. 2013). "This is so even where the defendant, as is true here, asserts that dismissal is appropriate because plaintiff's claims are preempted by the LMRA based on the existence of a CBA between plaintiff and defendant." *Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 419 (S.D.N.Y. 2013) (quoting *Nakahata*, 723 F.3d at 203). While Defendants also cited Rule 12(b)(1) in their motion to dismiss, under which the Court would ordinarily be permitted to reference documents outside the Complaint, they make no real challenge to the Court's jurisdiction. *See id.* at 419. Accordingly, the Court declines to consult the CBA, which Plaintiff does not reference in, rely on, or attach to the Complaint.

Defendant suggests that the Court consider its motion to dismiss as a motion for summary judgment under Fed. R. Civ. P. 56, so that the Court can consider the CBA. The decision to convert a 12(b)(6) motion to dismiss to a motion for summary judgment is a matter of the Court's discretion, *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006), and the Court declines to exercise such discretion here. Among other

things, discovery is needed to expand on the type and extent of the work Plaintiff conducted for which he was allegedly not compensated. It is premature to consider a motion for summary judgment at this time without the benefit of discovery.

Since Defendants' motion to dismiss depends entirely on the CBA, which the Court does not reference at this stage, the Court denies Defendants' motion. *See Kaye*, 975 F. Supp. 2d at 420. Even if the Court could consider the CBA, the motion would still be denied.

## II. Preemption Under the Labor Management Relations Act

Pursuant to Section 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Federal and state claims may be preempted by § 301 and dismissed where they are "substantially dependent upon analysis of the terms of an agreement made between parties in a labor contract." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2007) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 220 (1985)).

"Not every suit concerning employment or tangentially involving a CBA, however, is preempted by section 301." *Vera*, 335 F.3d at 114. If a court must *interpret* a CBA to resolve a claim, then it is preempted by § 301; if it merely must *consult* a CBA to resolve the claim, then it is not preempted. *See Kaye*, 975 F. Supp. 2d at 421. For example, a state law claim would not be preempted if it "required mere referral to the CBA for information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." *Id.* (quoting *Vera*, 335 F.3d at 115).

"The boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive." *Wynn v. AC Rochester*, 273 F.3d 153,

5

158 (2d Cir. 2001). The test in the Second Circuit for determining whether a claim is preempted by § 301 is described as follows:

> First, a court must analyze the legal character of the claim and whether it is truly independent of rights under the collective bargaining agreement. The starting point in making such a determination is consideration of the elements of plaintiffs' stated claims. If the right exists solely as a result of the CBA, and not by virtue of state law, then the claim is preempted, and the analysis ends there.
>
> Second, even if the right exists independently of the CBA, the court must still consider whether it is nevertheless substantially dependent on analysis of a collective-bargaining agreement. If such dependence exists, the claim is preempted by § 301; if not, the claim can proceed under state law. In making this determination, courts must consider whether the claim can be resolved by looking to versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not.

*Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 596 (E.D.N.Y. 2007) (internal citations and quotations marks omitted).

### A.  Plaintiff's Claims Are Independent from the CBA

Plaintiff's claims are independent from the CBA. It is "'well settled' that claims pursuant to N.Y. Labor Law are 'truly independent of rights under the CBA.'" *Kaye*, 975 F. Supp. 2d at 422. FLSA claims for overtime under 29 U.S.C. § 207 have similarly been found to be distinct from contractual claims under a CBA and thus not preempted by the LMRA. *See Isaacs v. Cent. Parking Sys. of New York, Inc.*, No. 10-CV-5636 ENV LB, 2012 WL 957494, at *4 (E.D.N.Y. Feb. 27, 2012); *Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 133 (E.D.N.Y. 2011) ("Employees' rights to minimum wage and overtime pay under the FLSA are separate and distinct from employees' contractual rights arising out of an applicable collective bargaining agreement."). Moreover, Plaintiff does not challenge any provisions or the legality of any terms of the CBA, and the Court need not interpret it. *See Vera*, 335 F.3d at 115-16.

This case is very similar to *Kaye*, where workers sought overtime pay for work performed outside of their normal hours. *See Kaye*, 975 F. Supp. 2d 412. In *Kaye*, as here, the

plaintiff did not allege a violation of the CBA, the plaintiff did not argue that a provision of the CBA violated state law, and there was no ambiguous provision. *Id.* at 422-27. Here, at most, the Court might need to reference the CBA to determine the rate of pay at which Plaintiff was owed overtime compensation. Such cases are not preempted by section 301.

Even if the CBA separately provided for overtime compensation for Plaintiff's activities, it was Plaintiff's prerogative to bring his claims under state and federal law. The CBA could "provide additional rights to the employees" without "overrid[ing] independent statutory rights." *Polanco*, 819 F. Supp. 2d at 134.

### B. Plaintiff's Claims Are Not Substantially Dependent on Analysis of the CBA

Defendants assert that the Court inevitably will have to interpret ambiguous provisions of the CBA to determine whether the Employer Commuter Flexibility Act of 1996 ("ECFA") and the Portal-to-Portal Act, codified together at 29 U.S.C. § 254(a), specifically exempt the type of work Plaintiff performed from what is compensable under the FLSA. But viewing the Complaint in the light most favorable to Plaintiff, Plaintiff's FLSA claim does not clearly fall within the exemptions of the EFCA and the Portal-to-Portal Act and thus does not fail to state a claim. *See* 29 U.S.C. § 254(a). Plaintiff asserts that being a truck driver was part of his employment with J.P. Hogan, and does not seek compensation for the time he spent commuting from home to J.P. Hogan. *See Colella v. City of New York*, 986 F. Supp. 2d 320, 342 (S.D.N.Y. 2013) (Plaintiffs who were solely tradesmen and not truck drivers could not receive overtime under the FLSA for time "spent traveling in Defendants' vehicles between their homes and work locations"). Rather, Plaintiff seeks compensation for the time he took each day, outside of his commute to and from home to J.P. Hogan, to load and transport a truck from J.P. Hogan to a job site. Plaintiff claims that this activity was part of his job duties, and that he was initially

7

compensated for it. The Court need not reference the CBA to determine that this is sufficient to state a claim under the FLSA.

Defendants assume that the Court will find that Plaintiff's activities are exempted from overtime compensation under the FLSA pursuant to the ECFA and the Portal-to-Portal Act, and that the Court will need to take a further step to determine if the CBA covers these activities such that the exemption would not apply, pursuant to 29 U.S.C. § 254(b). This is a backdoor attempt to get the whole Complaint knocked out as preempted under the LMRA. Since the Complaint states an FLSA claim independently, the Court need not consult the CBA to determine whether it would grant a contractual right to compensation for the type of work performed, such that Plaintiff can bring his FLSA claim without falling under the EFCA's restrictions. Defendants may, however, renew these arguments in a later motion for summary judgment.

### III. State Retaliation Claim

Defendants' only basis for dismissal of the state retaliation claim assumes that the Court will dismiss the N.Y. Labor Law and FLSA claims, and then decline to exercise supplemental jurisdiction over the single remaining state law claim. The Court has not dismissed any of the other claims, and thus will retain jurisdiction over the state retaliation claim.

### CONCLUSION

Defendants' motion to dismiss the Complaint is DENIED. The Clerk of Court is directed to terminate the motion at Dkt. 22.

Dated: New York, New York  
March _6_, 2019

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY  
United States District Judge